Danny HILL, Plaintiff,

v.

MOTEL 6, et al., Defendants.

No. C–1–00–1046.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 31, 2001.

Lee Hornberger, Cincinnati, OH, for plaintiff.

Scott Rowland Thomas, Norman J. Frankowski, II, Furnier & Thomas, Cincinnati, OH, James M.L. Ferber, Alison M. Day, Littler Mendelson, Columbus, OH, for defendants.

## ORDER THAT PLAINTIFF'S MOTION TO COMPEL (doc. 8) BE GRANTED IN PART AND DENIED IN PART

SHERMAN, United States Magistrate Judge.

### I. INTRODUCTION

This matter is before the Court upon Plaintiff Danny Hill's Motion To Compel Discovery (doc. 8), Defendants Motel 6 and Accor Economy Lodging, Inc.'s Memorandum In Opposition (doc. 10), Plaintiff's Reply (doc. 11), and Defendants' Sur–Reply (doc. 13). On September 19, 2001, the Court held a hearing during which the parties presented oral arguments.

### II. BACKGROUND

Motel 6 employed Plaintiff as an Area Manager from 1996 until it terminated his employment on July 27, 1999.[1] Plaintiff alleges that "age was the motivating reason for defendant's discharge of plaintiff." (Doc. at 4).

---

1. It appears that Accor is the proper Defendant based on Defendants' statement that "Plaintiff was employed by Motel 6, G.P., Inc. After his termination, Motel 6, G.P., Inc. changed its name to Accor Economy Lodge, Inc." (Doc. 13, n.1).

The Court will refer to "Defendants" throughout this Order as Plaintiff seeks discovery from both (doc. 8), and both joined in opposing Plaintiff's Motion To Compel (doc. 10).

Plaintiff's counsel explained during oral argument that at the time of his termination, Motel 6 was organized under one President, Georges LeMenier; six regional Vice Presidents; and fifty Area Managers. The regional Vice President who supervised Plaintiff was John O'Shaugnessy.

O'Shaugnessy apparently made the final decision to terminate Plaintiff's employment. Three others had, or may have had, input into the decision: President LeMenier; Vice President and Human Resources Director Joseph Eulberg; and Plaintiff's past supervisor, Vice President Patrick Bourguignon.

Plaintiff's Complaint is based on a theory of disparate treatment discrimination rather than the theory of disparate impact discrimination. *See* doc. 1 at 3–4. His Complaint states, "Defendant's discharge of plaintiff violated the Age Discrimination In Employment Act, 29 U.S.C. [§] 621, the Ohio Civil Rights Act, RC [Ohio Revised Code §§] 4112 [sic] and 4112.99, and Ohio public policy." (Doc. 1 at 4).

During the hearing concerning Plaintiff's Motion To Compel, the parties agreed that only three of his Requests For Production Of Documents remain at issue:

1. The personnel and job performance files of all Defendants' Area Managers.

2. The personnel files of three management-level employees who allegedly had input into the decision to terminate Plaintiff's employment.

3. All complaints or charges of age discrimination filed against Defendants with governmental or other agencies.

## III. ANALYSIS

### A. *Amended Rule 26(b)*

Although the parties have not addressed the recent amendments to Fed.R.Civ.P. 26(b)—which became effective on December 1, 2000—the Court must apply Rule 26(b) in its current form. The most significant amendment to Rule 26(b)(1) is that information discoverable under prior Rule 26(b)(1) as being "relevant to the subject matter involved in the pending action" may no longer be discoverable under amended Rule 26(b)(1), which now provides:

> Parties may obtain discovery regarding any matter, not privileged, that is *relevant to the claim or defense of any party* ....

Fed.R.Civ.P. 26(b)(1) (West 2001), *reprinted in* 192 F.R.D. 340, 388 (emphasis added). Once a request for discovery strays outside of an area "relevant to a claim or defense...," new Rule 26(b)(1) requires a showing of "good cause" as follows:

> For good cause shown, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*Id.* "The good cause standard is meant to be flexible, but the party seeking such discovery should ordinarily be able to articulate a reason for believing it is warranted." Wright, Miller and Marcus, 8 *Federal Practice and Procedure* § 2008, supplement at 15–16.

In this manner, Rule 26(b)(1) now focuses discovery on the actual claims and defenses at issue in the case. Discovery will only be broadened when demanded by the reasonable needs of the action, as the Advisory Committee intended:

> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. In general, it is hoped that reasonable lawyers can cooperate to manage discovery without the need for judicial intervention. When judicial intervention is invoked, *the actual scope of discovery should be determined according to the reasonable needs of the action.* The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

Fed.R.Civ.P. 26(b)(1)(advisory committee notes, *reprinted in* 192 F.R.D. at 389)(emphasis added).

With the above in mind, the Court turns to Plaintiff's three remaining discovery requests.

### B. Plaintiff's Main Contentions Regarding Personnel Files Lacks Merit

Plaintiff contends that all Area Managers' personnel files are discoverable because the files may contain evidence indicating Defendants had a policy or practice of age discrimination. This, Plaintiff argues, would tend to show that Defendants' decision to terminate his employment was discriminatory. Plaintiff's contentions lack merit.

#### 1.
#### Discriminatory Treatment vs. Discriminatory Impact

■ The Court recognizes that Plaintiff's contentions have intuitive appeal. After all, if an employer had a policy or practice of age discrimination, it seems reasonable to infer that this policy or practice played a role in his termination. Intuition, however, improperly combines the two categories of discrimination claims: discriminatory treatment and discriminatory impact.

When, as in the instant case, a plaintiff has raised only a discriminatory-treatment claim, Rule 26(b)(1) now requires the parties and the Court to carefully distinguish this claim from discriminatory-impact claims. This is so because the evidence relevant to proving each claim is quite different.

Disparate treatment ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion ... [or age]. Proof of discriminatory motive is crucial, although it can in some situations be inferred....

Claims that stress disparate impact involve employment practices that are facially neutral in their treatment of different groups but that fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive ... is not required....

*Hazen Paper Company v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)(internal punctuation and citations omitted).

The distinct nature of these categories of discrimination claims dictates that no reasonable inference of discriminatory treatment can be based solely on the existence of a policy or practice that falls more harshly on older employees. Plaintiff's attempt to discover the existence of such a policy or practice blurs the distinction between these types of claims, and therefore fails to establish either that discriminatory-impact evidence is relevant or that a search of all Area Managers' personnel files would likely lead to relevant evidence.

■ In addition, under Rule 26(b)(1), Plaintiff has no entitlement to discover all Area Managers' personnel files in the hope of developing a new age-discrimination claim based on a theory of discriminatory impact.[2] This case has been from the outset a discriminatory-treatment case—a discrete dispute over Defendants' motives for the single decision to terminate Plaintiff's employment, rather than a more expansive challenge to Defendants' company-wide policies or practices.

Accordingly, Plaintiff has not demonstrated that good cause exists to permit discovery of all Area Managers' personnel files.[3]

---

2. *See Bush v. Dictaphone Corp.,* 161 F.3d 363, 367 (6th Cir.1998)(approving of the balance struck between a party's "right to discovery with the need to prevent 'fishing expeditions.'"); *Blum v. Schlegel,* 150 F.R.D. 38, 39 (W.D.N.Y. 1993)("even though the standard for relevancy for discovery purposes is a liberal one, ... the parties should not be permitted to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so."); *see also* Advisory Committee Notes, *supra,* p. 3.

3. Aside from these reasons, Plaintiff faces another problem. "[T]here is now considerable doubt as to whether a claim of age discrimination may exist under a disparate-impact theory." *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1048 (6th Cir.1998). Given this, Plaintiff must do more than he has here to demonstrate that good cause exists to permit company-wide discovery of Area Managers' personnel files.

### 2.
### Plaintiff's Cases Do Not Support Broad Discovery

Plaintiff argues that under *Logan v. Denny's, Inc.*, 259 F.3d 558 (6th Cir.2001), the existence of an employer's policy or practice of age discrimination is relevant to proving that a single decision to discharge an employee was discriminatory. *Logan*, however, does not extend this far. The Court of Appeals in *Logan* stated in pertinent part:

> Defendant's past history of discriminatory conduct, both to its minority patrons and employees alike, is well known in the jurisprudence and public forums.... Although we recognize that Defendant's past record of discrimination is not at issue here, the fact remains that Defendant is no stranger to race discrimination suits, and the district court's failure to see through Defendant's tactics and recognize the many genuine issues of material fact in this case is disturbing.

259 F.3d at 577–78. Reading this statement in context reveals it was not intended to resolve the issue of whether discriminatory-impact evidence is relevant under Rule 26(b)(1) to proving a claim of discriminatory treatment. The statement instead appears in *Logan* after a lengthy and detailed discussion of pretext, within which the Court chastised the defendant's attorneys for mischaracterizing the record. 259 F.3d at 574–78. In this context, it became noteworthy that the defendant "was no stranger to race discrimination suits...," and this fact, the Court of Appeals felt, should have led the district court to "see through Defendant's tactics..." of mischaracterizing the record. 259 F.3d at 577–78. This is far from holding that discriminatory-impact evidence is relevant and discoverable under Rule 26(b)(1) to proving discriminatory treatment.

Plaintiff also argues that *EEOC v. Roadway Express*, 261 F.3d 634, 2001 U.S.App. LEXIS 18998 (6th Cir.2001) supports his broad request for personnel files. *Roadway Express, Inc.* is distinguished from the instant case because the "relevancy" standard at issue there was measured in terms of a discriminatory-impact claim. Again, the instant case only involves discriminatory-treat-ment claims. In addition, the Court's "relevancy" discussion in *Roadway Express, Inc.* focused on the issue of what discovery the EEOC was entitled to in response to a subpoena, rather than what information was relevant and discoverable under Rule 26(b)(1).

The Court has reviewed the remaining cases cited by Plaintiff in his Memorandum and Reply and during oral argument and finds that these cases do not support Plaintiff's request to discover all of the Area Managers' personnel files.

### 3.
### Plaintiff's Remaining Argument

To the extent Plaintiff seeks evidence tending to show that Defendants had a company-wide policy or practice that required discriminatory treatment of older employees—if for, example, Defendants required supervisors to terminate employees over forty years old—such evidence would be relevant and discoverable under Rule 26(b)(1) to whether Plaintiff was terminated because of his age. This possibility, however, does not provide Plaintiff with a right to company-wide discovery of personnel files, particularly when he has not articulated any facts or circumstances suggesting such a policy existed.

■ However, because the evidence supporting the existence of such a claim is relevant under Rule 26(b)(1), a limited search for a discriminatory-treatment policy or practice is reasonable. The place to search for such information is in the personnel files of the Area Managers supervised by O'Shaugnessy, Plaintiff's supervisor, because it is reasonable to assume that O'Shaugnessy's status as a Vice President would require him to enforce any existing company-wide policy or practice to discriminate against older employees. In addition, these Area Managers' personnel files are discoverable for the reasons reviewed next.

### C. Some Area Managers' Personnel Files Are Discoverable
### 1.
### O'Shaugnessy's Area Managers

Good cause exists to permit Plaintiff to discover the information contained in the

files of O'Shaugnessy's Area Managers, because O'Shaugnessy was both Plaintiff's supervisor and because he apparently made the final decision terminate Plaintiff's employment. Given these facts, it is reasonable to search the personnel files of Area Managers O'Shaugnessy supervised for information about how he evaluated or treated them. Such information will tend to illuminate whether or not he held an age bias against those he supervised, and is therefore relevant and discoverable under Rule 26(b)(1) to Plaintiff's claims and to the subject matter of the action.

Defendants contend that personnel files should not be produced absent a compelling showing of relevance in order to protect employees' privacy interests. As analyzed below, *infra*, § III(D), protection of privacy interests in personnel files can be accomplished by application of the parties' Confidentiality Agreement And Protective Order, and by excluding from production any unlisted addresses and telephone numbers, marital status, wage information, medical information, and credit history.

Accordingly, Plaintiff has established that good cause exists to require Defendants to produce the personnel files of the Area Managers supervised by O'Shaugnessy.

### 2.

### *The Other Area Managers*

Plaintiff has failed to demonstrate good cause for permitting discovery of the remaining Area Managers' personnel files, because he has not articulated a sufficient reason for concluding that such broad discovery is reasonably necessary or warranted under the circumstances of this case.

The fact that employees were (or are) Area Managers does not by itself suggest that their personnel files will contain any information likely to lead to admissible evidence. Plaintiff does not assert that Area Managers

played any role in termination decisions made by other Area Managers or that other Area Managers played any role in O'Shaugnessy's decision to terminate his employment. Plaintiff, moreover, has not asserted facts sufficient to constitute even a minimal showing that he was similarly situated to any Area Manager not supervised by O'Shaugnessy.[4]

Accordingly, Plaintiff's request for Area Managers' personnel files, other than those supervised by O'Shaugnessy, lacks merit.

### D. *The Personnel Files Of LeMenier, Bourguignon, and Eulberg Are Discoverable*

■ Plaintiff seeks the personnel files of three individuals who allegedly had input into the decision to terminate his employment: President LeMenier, Human Resources Director Eulberg, and Vice President Bourguignon, Plaintiff's past supervisor.

Good cause exists to require production of these personnel files because Plaintiff has articulated a sufficient reason—their participation in the decision to terminate his employment—for concluding that his request for these files is reasonably calculated to lead to the discovery of admissible evidence.

Defendants argue that LeMenier's personnel file is not discoverable because there is no evidence that he was involved in the decision to terminate Plaintiff's employment. This contention lacks merit. Plaintiff's deposition testimony constitutes sufficient evidence to establish good cause under Rule 26(b)(1) to permit Plaintiff to discover LeMenier's personnel file. Plaintiff testified under oath during his deposition that O'Shaugnessy told him, "George [LeMenier] had approved the termination." (Doc. 11 at 3 and exhibit 7). O'Shaugnessy's alleged statement provides Plaintiff with more than a subjective belief or mere speculation about LeMenier's involvement in his termination. Although

---

**4.** This is not to say that Plaintiff must conclusively establish during discovery that an employee was similarly situated to him in order to discover information about the employee. He must, however, at least articulate some basis for concluding that a reasonable similarity exists between his employment situation and the employment situation of the alleged similarly-situated employee.

Compare *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998)(clarifying the test to determine who is a similarly-situated employee) *with Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir.1998)(materials sought must be "reasonably calculated to lead to the discovery of admissible evidence."). Plaintiff has not done so here.

Defendants deny this allegation, their denial only reveals the existence of a credibility dispute. Plaintiff's testimony is sufficient to establish good cause for concluding that his request to produce LeMenier's personnel file is reasonably calculated to shed light on the true reason or reasons behind Defendants' decision to terminate Plaintiff's employment.[5]

Defendants also argue that Plaintiff should not be permitted to discover the personnel files of LeMenier, Bourguignon, and Eulberg because their privacy interests should not be invaded without a compelling showing of relevance. To support this contention Defendants rely on *Knoll v. American Telephone & Telegraph Company*, 176 F.3d 359 (6th Cir.1999), which recognized the private nature of personnel files.

> [P]ersonnel files might contain highly personal information such as an individual's unlisted address and telephone numbers, marital status, wage information, medical background, credit history (such as requests for garnishment of wages), and other work-related problems unrelated to plaintiff's claims.

*Knoll*, 176 F.3d at 365.

The Court recognizes the significant privacy interests LeMenier, Bourguignon, and Eulberg have in their personnel files. *Knoll*, however, did not hold that privacy interests override Rule 26(b)(1)'s standards. *Knoll* instead involved no abuse of discretion in the District Court's Order permitting discovery of personnel files under the terms of a protective order that "did not substantially harm [the plaintiff's] ability to collect evidence necessary for prosecution of his case." 176 F.3d at 365.

Because the parties' Confidentiality Agreement And Order (doc. 9) will protect LeMenier's, Eulberg's, and Bourguignon's privacy interests, and because Plaintiff has shown good cause for concluding that such discovery should be permitted, *Knoll* does counsel otherwise. In addition, protection of these individuals' privacy interests can also be accomplished by excluding from production any unlisted addresses and telephone numbers, marital status, wage information, medical information, and credit history.

Defendant further relies on *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 384 (W.D.Tenn.1999), which states the privacy interests inherent in personnel files bar their production unless "compelling evidence" demonstrates the information sought is relevant. As with *Knoll*, *Miller* does not apply privacy interests to override Rule 26(b)(1). Whether or not *Miller's* "compelling evidence" standard is proper, such evidence existed in *Miller* by a showing that the employees whose personnel files were sought participated in the alleged discriminatory decision to terminate the plaintiff. 186 F.R.D. at 384–85. Because Plaintiff has made a similar showing in the instant case, and because good cause exists to support the conclusion that Plaintiff's request for this information is reasonably calculated to lead to the discovery of admissible evidence, *Miller* does not aid Defendants.

Accordingly, Plaintiff is entitled to discover the personnel files of LeMenier, Eulberg, and Bourguignon.

### E. *Plaintiff's Request For All (Nationwide) Charges Of Discrimination Against Defendants Is Excessive*

■ Plaintiff seeks "All complaints and/or charges filed with governmental or other agencies charging and/or alleging defendant and/or its employees with violating the Age Discrimination in Employment Act or similar state or local laws." (Doc. 8, exh. 10 at 7).

This Request for Production is too broad for the reasons stated previously concerning the fact that this case is not a discriminatory-impact case. *Supra*, § III(B)(1). Good cause exists, however, to the extent this Request seeks charges or complaints of discrimination within the geographic region O'Shaugnessy supervised. If complaints or charges exist in this limited geographic area, Plaintiff should be permitted to search them for evidence of age bias, including possible

---

**5.** This not to say that Plaintiff's testimony conclusively establishes a connection between LeMenier and the decision to terminate Plaintiff's employment. This is only to say that good cause exists for permitting Plaintiff to discover LeMenier's personnel file.

discovery of witnesses to age bias, especially any age bias held by O'Shaugnessy.

Accordingly, Plaintiff's request to produce all (nationwide) charges and complaints of discrimination is too broad. Plaintiff is entitled to discover such charges against Defendants only within the geographic region supervised by O'Shaugnessy.

**IT IS THEREFORE ORDERED THAT**

. Plaintiff's Motion To Compel (doc. 8) is granted in part as follows:

1. Defendants shall produce the personnel files of the Area Managers supervised by O'Shaugnessy subject to the terms of the parties' Confidentiality Agreement And Protective Order. This is further limited to exclude from production any unlisted addresses and telephone numbers, marital status, wage information, medical information, and credit history.

2. Defendants shall produce the personnel files of LeMenier, Eulberg, and Bourguignon subject to the terms of the parties' Confidentiality Agreement And Protective Order. This is further limited to exclude from production any unlisted addresses and telephone numbers, marital status, wage information, medical information, and credit history.

3. Defendants shall produce copies of all complaints or charges of age discrimination against them in the geographic region supervised by O'Shaugnessy.

Plaintiff's Motion To Compel (doc. 8) is otherwise denied.